**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
VIVIENNE A. BRUNSON-BEDI,

|  |  |
|---|---|
|  | Index # |
| Plaintiff, | Date Purchased: |
|  |  |
| -against- | **COMPLAINT** |

THE STATE OF NEW YORK (HUDSON VALLEY
DDSO), Local 412 of the CSEA, Inc., Local 1000,
AFSCME, AFL-CIO, and BASIL TOWNSEND,
individually,

Defendants.
------------------------------------------------------------------X

The Plaintiff, VIVENNE A. BRUNSON-BEDI, by her attorney, Barry D. Haberman,

Esq., complaining of the Defendants, THE STATE OF NEW YORK (HUDSON VALLEY

DDSO) ("State of New York"), LOCAL 412 OF THE CSEA, INC. LOCAL 1000, AFSCME,

AFL-CIO ("CSEA") and BASIL TOWNSEND ("Townsend") (collectively, the "Defendants"),

respectfully alleges as follows:

1.      The Plaintiff, Vivienne A. Brunson-Bedi ("Plaintiff" and/or "Bedi"), is a New

York resident, domiciled at 8 Underhill Road, #5, Middletown, NY 10940, which is located in

Orange County, New York, which is located in the Southern District of New York.

2.      Upon information and belief, Defendant CSEA has its principal offices located at

143 Washington Avenue, Albany, New York 12210.

3.      Upon information and belief, Defendant CSEA maintains offices at 7 Wilbur

Road, Thiells, New York 10985.  Said office is located in Rockland County, which is located in

the Southern District of New York.

4.      Upon information and belief, Defendant State of New York (Hudson Valley

DDSO)("State of New York") maintains offices at 7 Wilbur Road, Thiells, New York 10985

1

through the Defendant CSEA.  Said office is located in Rockland County, which is located in the Southern District of New York.

5.      Upon information and belief, Defendant Townsend is a New York resident, domiciled at 10 Trinity Place, Spring Valley, New York 10977.  Said Defendant resides in Rockland County, which is located in the Southern District of New York.

6.      Defendant Townsend is an employee of Defendant State of New York.

7.      The Plaintiff, Bedi is a female.

8.      The Plaintiff was hired by the Defendant State of New York on November 2, 1987 as a Direct Support Aide with the Hudson Valley DDSO.

9.      On August 29, 2013, the Plaintiff, Bedi was obtained the elected position of Secretary for the Defendant CSEA's "Local 412" union and commenced working for Defendant CSEA (while retaining employment for Defendant State of New York).  In essence, Plaintiff was employed simultaneously by Defendant CSEA and Defendant State of New York, pursuant to the custom, practice and agreement of said Defendant CSEA and Defendant State of New York.

10.     The dominant subject matter of this Verified Complaint is grounded in Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et. seq., as amended in 1991 ("Title VII").

11.     Actions grounded in Title VII are permitted to be brought before United States Courts.

12.     As all the Defendants are located in and conduct business in a locality lying within the Southern District of New York and as events which gave rise to the causes of action occurred within the Southern District of New York, under 28 U.S.C. sec. 1391(b) the Southern District of New York is the proper venue for this action.

13.     Plaintiff filed a Complaint with the United States Equal Employment Opportunity Commission ("EEOC").   Said Charging Complaint was designated as EEOC Charge No. 520-2015-01102.

14.     On September 16, 2015 the EEOC issued Plaintiff a "Notice of Right to Sue." Said "Notice of Right to Sue" is attached herein as Exhibit 1.

15.     In accordance with the Notice of Right to Sue, the within Complaint is required to be filed within 90 days of the Plaintiff's receipt of said Notice of Right to Sue.

16.     As said Notice of Right to Sue was received on September 21, 2015, the filing of the within Complaint is timely through and including December 21, 2015.

17.     Plaintiff demands a jury trial to resolve all issues herein.

## FACTUAL ALLEGATIONS

18.     Plaintiff repeats and reiterates each and every allegation set forth above as if fully set forth herein.

19.     At all times relevant to this action, Plaintiff properly and satisfactorily performed the duties of her employment.

20.     The Plaintiff's proficiency and competency in employment was recognized by the Defendant CSEA.

21.     The Plaintiff was promoted to Secretary of the Defendant CSEA's local branch, CSEA Local 412 on August 29, 2013.   Plaintiff served as Secretary of the Defendant CSEA Local 412 through November 4, 2014, when said position was rescinded by the Defendant, Basil Townsend in retaliation for the Plaintiff's acts described below, including the Plaintiff's refusal of the Defendant Basil Townsend's constant sexual advances and suggestions toward the Plaintiff in the work place.

3

22.     At all times relevant herein, and specifically during Plaintiff's time of employment and time as Secretary of CSEA Local 412 ("Local 412"), Defendant Townsend was President of CSEA Local 412 and was Plaintiff's Supervisor.

23.     During the course of Plaintiff's employment by the Defendant CSEA, Plaintiff suffered due to the Defendant Townsend's continuous sexual harassment and discrimination against her.

24.     The sexual harassment by the Defendant Townsend deeply affected and still deeply affects the Plaintiff.

25.     Plaintiff refused the Defendant Townsend's sexual advances and requests for sexual favors each time such advances and requests were made.  The Plaintiff's refusal to engage in the Defendant Townsend's sexual advances and her refusal to provide Defendant Townsend with sexual favors also deeply affected the working conditions and employment terms of the Plaintiff as an employee of the Defendant CSEA and in her capacity as Secretary of Local 412.

26.     In addition, the Defendant Townsend's sexual harassment of the Plaintiff included intimidation, ridicule and insults which caused a hostile work environment that permeated the work place and altered the conditions of the Plaintiff's employment.

27.     Adverse employment actions taken against Plaintiff included a demotion due to her reporting of the sexual harassment by Defendant Townsend and her refusal of Defendant Townsend's sexual advances and requests for sexual favors.

28.     Defendant Townsend began sexually harassing thee Plaintiff in or about October 2013.  Such sexual harassment continued throughout her employment.  Several specific incidents of Defendant Townsend's sexual harassment of the Plaintiff are described below.

29.    During work hours when Plaintiff and Defendant Townsend were working together, Defendant Townsend would initiate sexual advances at the Plaintiff and ask her for sex, promising that in return for sexual favors, he, as the Plaintiff's Supervisor, would help promote the Plaintiff to Executive Vice President of CSEA Local 412 in the next election.

30.    Defendant Townsend would ask Plaintiff for sex on a daily basis.

31.    As the Plaintiff continuously rejected every one of the Defendant Townsend's advances, the Defendant Townsend began to retaliate against and abuse the Plaintiff in front of other employees.

32.    Plaintiff was certified by the Defendant CSEA to represent other employees in grievance hearings.  Because the Plaintiff refused the Defendant Townsend's sexual advances, the Defendant Townsend, in his capacity as Plaintiff's Supervisor, suspended Plaintiff from labor conferences and from representing employees of the Defendant CSEA at grievance hearings.

33.    On December 3, 2013, while Plaintiff was out on medical leave, Defendant Townsend initiated another adverse retaliatory employment action against the Plaintiff. Defendant Townsend rescinded the Plaintiff's position as Secretary for CSEA Local 412 by requesting that Hudson Valley DDSO release Plaintiff's organizational leave time.  Defendant Townsend had no justification for such adverse retaliatory employment action other than Plaintiff's refusals of the sexual advances by said Defendant.

34.    Also during Plaintiff's medical leave, Defendant Townsend made numerous comments to and in front of multiple other employees of the Defendant CSEA regarding the Plaintiff's medical leave.  Such comments included questioning the legitimacy of Plaintiff's medical leave and that the Plaintiff was not actually out due to a medical reason.

35.     The Defendant Townsend's sexual harassment of the Plaintiff was so bad and so continuous that it permeated the work place, occurring in front of many other employees of the Defendant CSEA during work hours and at work related events.

36.     On October 3, 2014 at a luncheon, Defendant Townsend approached another employee of Defendant CSEA and told her to look at how the Plaintiff was dressed. Defendant Townsend said that the Plaintiff was walking around like a street walker and that he had to do something about her.

37.     Defendant Townsend made numerous disparaging remarks about the Plaintiff during the Plaintiff's employment including that the Plaintiff is a "hoochie mama". In front of other employees, Defendant Townsend referred to Plaintiff as a "fucking bitch", a "pussy", stated that she has a "nice ass", that he wanted to "bang her", that she dresses like a "slut" or "whore", that she was "fucking everyone in the place" and is "selling out her pussy".

38.     Defendant Townsend's sexual harassment of the Plaintiff also included making gestures towards her by grabbing his penis and saying that when he takes Viagra he can hold out as long as anyone. Defendant Townsend often commented on the size of the Plaintiff's breasts and told Plaintiff he would like to suck on them. Defendant Townsend boasted about his size and sexual prowess to the Plaintiff. Defendant Townsend asked the Plaintiff if she was wearing any underwear and that he could get her clothes off in no time.

39.     One occasion, when Plaintiff returned to work from having her lunch, Defendant told Plaintiff she smelled of sex.

40.     At work and during hours of employment, Defendant Townsend has asked Plaintiff to watch porn with him and told Plaintiff she may learn something from it. Defendant Townsend has told Plaintiff he wanted to see her naked to see if she had a "fat pussy" and to see

if she looked good naked.  Defendant Townsend has also told Plaintiff that she would "be lucky to perform oral sex on his penis".

41.     All of the foregoing acts of the Defendant Townsend constitute verbal and physical sexual harassment toward the Plaintiff at the workplace.

42.     In her capacity as Local Secretary, Plaintiff was on full- time (40 hours) employee organizational leave ("EOL").  EOL time is granted to employees who are also officers of the Union, such as the Plaintiff, to allow such employees time to perform Union duties while on employer time.  The Local President, in this case Defendant Townsend, has decision making power to determine who is granted EOL time.

43.     In retaliation for the Plaintiff's refusal of Defendant Townsend's sexual advances, Defendant Townsend revoked all of the Plaintiff's EOL time and openly told other employees not to donate any of their EOL time to the Plaintiff.

44.     Plaintiff began an approved FMLA leave beginning November 3, 2014.  While Plaintiff was on said approved medical leave, the Defendant Townsend, in violation of Union rules and in detriment to the best interests of Defendant CSEA, disclosed Plaintiff's personal and confidential medical information to members, officers, delegates, staff and others.

45.     Specifically, Defendant Townsend told several CSEA members and/or fellow officers that the Plaintiff "was not really sick", that "she didn't have cancer", that "she does this every year", that "she takes FMLA for vacation", that "she's on vacation" and "out screwing around".

46.     Defendant Townsend also told other employees not to donate any leave accruals to the Plaintiff.

7

47.     Such comments constitute revelation of private confidential information of Defendant Townsend's fellow officer which is conduct clearly detrimental to the best interests of the Defendant CSEA and constitutes an adverse act against the Plaintiff.

48.     After going out on medical leave on or about November 3, 2015, Plaintiff position of Secretary was rescinded by Defendant Townsend on or about November 4, 2015, in retaliation for her reporting of the sexual harassment by Defendant Townsend and for her refusal to engage in sexual relations with Defendant Townsend.

49.     Due to the Defendant Townsend's retaliatory acts against the Plaintiff in rescinding her position of Secretary, Plaintiff suffered a loss in Honoraria compensation in the amount of $500 per month for a total of ten (10) months.

50.     Due to the retaliatory acts of Defendant Townsend, the Defendant CSEA and Defendant State of New York, Plaintiff suffered a displacement in the workforce and suffered a demotion to her prior position of Direct Support Aide.

51.     Plaintiff was required to relocate due to her position as Secretary.  As a direct result of the retaliatory acts of the Defendant Townsend in rescinding her positon, Plaintiff was caused to relocate at her own expense and suffered a loss of the moving expenses as well as her expected income of $500 per month for the remainder of her term as Secretary.

52.     On July 7, 2015, the Judicial Board of the Plaintiff's Union, Defendant CSEA, issued a Decision finding that, *inter alia*, the Defendant, Basil Townsend, did in fact commit verbal harassment of the Plaintiff, Vivienne Bedi.  Said Decision is attached herein as Exhibit 2.

53.     Among the evidence relied upon by the Judicial Board in reaching its Decision is the finding that the Defendant, Basil Townsend, referred to the Plaintiff, Vivienne Bedi as a "hoochie mama" as demonstrated by a recording.  (See Exhibit 2, page 2).

8

54.     The Judicial Board stated, "Given the bulk of evidence demonstrating the inappropriate comments and statements that were attributed to Respondent coupled with no plausible evidence of improper motivation on behalf of the corroborating witnesses, the Board cannot escape the conclusion that Respondent engaged in verbal harassment toward the Complaining Witness which is conduct detrimental to the best interests of CSEA.  Such conduct cannot be taken lightly nor tolerated.   Charge I is therefore sustained with regard to verbal harassment."  (See Exhibit 2, page 3).

55.     The witness testimony relied upon by the Judicial Board in reaching such determination was the testimony of six witnesses aside from the Plaintiff.   Said witnesses testified that Defendant, Basil Townsend made numerous disparaging marks about the Plaintiff, Vivienne Bedi.  (See Exhibit 2, page 2).  In addition, the witnesses testified that Defendant, Basil Townsend referred to the Plaintiff, Vivienne Bedi as a "fucking bitch," "pussy," that she has a "nice ass," that he wanted to "bang her," that she "dresses like a slut" and/or a "whore," that she "was fucking everyone in the place," and she is "selling out her pussy."  (See Exhibit 2, page 2).

56.     Upon information and belief, the Defendant State of New York was aware of the sexual harassment of the Plaintiff, Vivienne Bedi at the time such acts occurred.

57.     Upon information and belief, the Defendant State of New York failed remedy the sexual harassment despite having knowledge that same was occurring.

58.     Upon information and belief, the Defendant State of New York was aware of the aforementioned adverse employment actions taken against the Plaintiff, Vivienne Bedi.

59.     Upon information and belief, the Defendant State of New York failed to remedy the adverse employment actions taken against the Plaintiff, despite having knowledge that same was occurring.

**AS AND FOR A FIRST CAUSE OF ACTION**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

60.     Plaintiff repeats and reiterates each and every allegation set forth above as if fully set forth herein.

61.     The acts complained of above constitute a continuing series of adverse and retaliatory employment acts.

62.     The acts complained of above constitute a violation of the Plaintiff's rights pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., as amended in 1991.

63.     The Plaintiff seeks all remedies provided under Title VII for the discrimination based upon sex and sexual harassment by Defendant Townsend, and the retaliation of the Defendant CSEA and Defendant Townsend for reporting the sexual harassment of the Defendant Townsend.

64.     Thus, there is now due and owing from the Defendants to the Plaintiff, back pay in the amount of $5,000, with interest from November 4, 2014, front pay in an amount to be determined by the court, punitive damages in the amount of $300,000.00, reinstatement of the Plaintiff's official position, the monetary value of health care and pension benefits the Plaintiff, Bedi has been deprived of by the actions of the Defendants, as well as Attorney's fees, the remedies provided a Plaintiff under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. as amended in 1991, for suffering retaliation, and sexual harassment, in the workplace.

**AS AND FOR A SECOND CAUSE OF ACTION**

**VIOLATION OF NYS HUMAN RIGHTS LAW**

10

65.    Plaintiff repeats and reiterates each and every allegation set forth above as if fully set forth herein.

66.    As a result of the discriminatory and retaliatory acts of the Defendants as alleged above, the Plaintiff has suffered physical and emotional illness.

67.    The physical and emotional illnesses constitute pain and suffering.

68.    Said actions of Defendant discriminating against the Plaintiff because of her sex, and in retaliation for complaining about and reporting the sexual harassment by Defendant Townsend, constitutes violations of the Plaintiff's rights under New York State Human Rights Law, Executive Law (Article 15), § 290 et. seq.

69.    Plaintiff seeks all remedies available under New York State Human Rights Law, including recovery for pain and suffering.

70.    Due to the actions of the Defendants, Plaintiff has suffered cognizable damages recoverable under New York State Human Rights Law.

71.    Thus, because of Defendants violations of New York State Human Rights Law, there is now due and owing from the Defendants to the Plaintiff, restoration of Plaintiff to her official position, back pay in the amount of $500.00, with interest from November 4, 2014, front pay in an amount to be determined by the court, lost benefits in an amount to be determined at trial, liquidated damages in an amount to be determined by the court, plus benefits to be determined at trial, and pain and suffering in the amount of $2,000,000.00, the remedies provided a Plaintiff under the provisions of New York State Human Rights Law, Executive Law (Article 15), Sec. 290 et. seq. for suffering the unlawful adverse employment actions and sexual harassment in the work place.

**WHEREFORE,** the Plaintiff, Vivienne A. Brunson-Bedi, demands judgment:

11

(1)     Against the Defendants for the violation of the Plaintiff Bedi's rights under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et. seq., as amended in 1991, ("Title VII");

(2)     Against the Defendants, awarding the Plaintiff, Bedi, back pay in the amount of $500.00, with interest from November 4, 2014, front pay in an amount to be determined by the court, punitive damages in the amount of $300,000.00, reinstatement of the Plaintiff's official position, the monetary value of health care and pension benefits the Plaintiff, Bedi has been deprived of by the actions of the Defendants, as well as Attorney's fees, the remedies provided a Plaintiff under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. as amended in 1991, for the discrimination Plaintiff suffered on the basis of sexual harassment.

(3)     Against the Defendants for the retaliatory actions after the Plaintiff alleged discrimination and sexual harassment in her employment, in violation of the Plaintiff's rights under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et. seq., as amended in 1991, ("Title VII").

(4)     Against the Defendants, awarding the Plaintiff Bedi, back pay in the amount of $500.00, with interest from November 4, 2014, front pay in an amount to be determined by the court, punitive damages in the amount of $300,000.00, reinstatement of the Plaintiff's official position, the monetary value of health care and pension benefits the Plaintiff, Bedi has

been deprived of by the actions of the Defendants, as well as Attorney's fees, the remedies provided a Plaintiff under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. as amended in 1991, for suffering retaliation and sexual harassment in the workplace.

(5)     Against the Defendants, for the retaliation suffered by the Plaintiff, "Bedi" in her employment for Plaintiff's reporting of sexual harassment discrimination, resulting in adverse employment actions, in violation of the Plaintiff, "Bedi's" rights under the provisions of New York State Human Rights Law, Executive Law (Article 15), Sec. 290 et. seq.

(6)     Against the Defendants awarding the Plaintiff, restoration of Plaintiff to her official position, back pay in the amount of $500.00, with interest from November 4, 2014, front pay in an amount to be determined by the court, lost benefits in an amount to be determined at trial, liquidated damages in an amount to be determined by the court, plus benefits to be determined at trial, and pain and suffering in the amount of $2,000,000.00, the remedy provided a Plaintiff under the provisions of New York State Human Rights Law, Executive Law (Article 15), Sec. 290 et. seq. for suffering the unlawful retaliatory termination.

(7)     Against the Defendants, for the discrimination suffered by the Plaintiff, "Bedi" in her employment for Plaintiff's on the basis of sexual harassment discrimination, resulting in adverse employment actions, in violation of the Plaintiff, "Bedi's" rights under the provisions of New York State Human Rights Law, Executive Law (Article 15), Sec. 290 et. seq.

(8)     Against the Defendants awarding the Plaintiff, restoration of Plaintiff to her official position, back pay in the amount of $500.00, with interest from November 4, 2014, front pay in an amount to be determined by the court, lost benefits in an amount to be determined at trial, liquidated damages in an amount to be determined by the court, plus benefits to be determined at trial, and pain and suffering in the amount of $2,000,000.00, the remedy provided a Plaintiff under the provisions of New York State Human Rights Law, Executive Law (Article 15), Sec. 290 et. seq. for the unlawful discrimination and sexual harassment.

(9)     Awarding Plaintiff attorney fees, costs and expenses as applicable under "Title VII" and New York State Human Rights Law.

(10)    Granting to Plaintiff such other and further relief as the Court deems just and proper.

Dated: New City, New York
       December 14, 2015

                              /s/ Barry D. Haberman
                              BARRY D. HABERMAN, ESQ.
                              Attorney for Plaintiff
                              VIVIENNE A. BRUNSON-BEDI
                              254 South Main Street, #404
                              New City, New York 10956
                              845-638-4294
                              bdhlaw@aol.com

# EXHIBIT
# 1

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  Vivienne A. Brunson-Bedi<br>P.O. Box 319<br>Pound Ridge, NY 10576 | From:  New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

RECEIVED
SEP 2 1 2015
BY: ......................

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-01102 | Jessica A. Erdman, Investigator | (212) 336-3749 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Kevin J. Berry*

**Kevin J. Berry,**
**District Director**

09/16/15

*(Date Mailed)*

Enclosures(s)

cc:  **Attn: Union President**
     **CSEA LOCAL 1000**
     **568 State Route 52**
     **Beacon, NY 12508**

     **Barry Haberman, Esq.**
     **254 South Main Street**
     **New City, NY 10956**

# EXHIBIT
# 2

**PURSUANT TO ARTICLE XIII, SECTION 3(a)**
**OF THE LOCAL CONSTITUTION OF THE**
**CIVIL SERVICE EMPLOYEES ASSOCIATION, INC.**

---

In the Matter of BASIL TOWNSEND, as
President of Local 412 of the CSEA, Inc.,
Local 1000, AFSCME, AFL-CIO

**JUDICIAL BOARD**
**DECISION**

**CASE NOS: JB-14-0017**

---

A hearing in the above-captioned matter was scheduled for February 13, 2015, at the CSEA Region 3 Office in Beacon, New York before Hearing Officer Kim Wallace-Russo and Judicial Board Chair Robert Timpano. Complaining Witness Vivienne Brunson-Bedi appeared at the hearing *pro se*. The Respondent, Local President Basil Townsend, appeared at the hearing *pro se*. Respondent requested an adjournment in order to obtain counsel. Hearing Officer Wallace-Russo granted the adjournment, and the matter was reconvened on March 19, 2015, at the CSEA Region 3 Office in Beacon, New York. The Complaining Witness was represented by Barry Haberman, Esq., and Respondent was represented by Patrick Tittle, Esq. A second day of hearing was held on April 24, 2015. All parties were afforded the opportunity to present evidence and testimony. Fourteen (14) witnesses gave testimony. The Judicial Board considered the Charges at its last regularly scheduled meeting.

## DECISION

At all times relevant herein and specifically since June 29, 2011 to present, the Respondent has served as the duly elected President of CSEA Local 412.

In accordance with the CSEA Local Constitution, Article XIII, Section 3(a)(4)(a), "a violation of any provision of the … Local Constitution," (f), "interfering with any elected official of CSEA in the discharge of that official's lawful duties," and (j), "any other conduct detrimental to the best interests of CSEA," shall constitute the basis for a complaint against any member or officer of CSEA.

1

The Complaining Witness alleged various inappropriate acts by Respondent for the period October 2013 through December 2014, as more fully set forth below.  According to the testimony of the Complaining Witness, she commenced a medical leave of absence, which continues today, in or about November 2014.  According to the testimony of the Complaining Witness, she first complained to CSEA of Respondent's alleged conduct when she filed her complaint in the matter herein.

## CHARGE I

Charge I alleges that, "Beginning in or about October 2013, you made numerous requests for sexual favors to, and engaged in harassment of a sexual nature, both verbally and physically, toward the complaining witness.

As Local President, sexually harassing your fellow officer, if proven, interferes with the complaining witness' lawful duties as Local Secretary and is conduct detrimental to the best interests of CSEA."

With regard to the verbal harassment, even if the Complaining Witness' testimony was not considered, six (6) other witnesses testified that Respondent made numerous disparaging remarks about the Complaining Witness.  We know that Respondent referred to the Complaining Witness as a "hoochie mama," as demonstrated by a recording.  In addition, the witnesses testified that Respondent referred to the Complaining Witness as a "fucking bitch," "pussy," that she has a "nice ass," that he wanted to "bang her," that she "dresses like a slut" and/or a "whore," that she "was fucking everyone in the place," and she is "selling out her pussy."

The Complaining Witness testified that Respondent would "grab his penis and say that when he takes Viagra, he can hold out as long as anyone."  Respondent would comment on the size of the Complaining Witness' breasts and say he would like to "suck on them."  Respondent requested sexual relations on a regular basis.  Respondent boasted about his size and sexual prowess.  Respondent would ask Complaining Witness if she was wearing underwear.  Respondent would tell Complaining Witness that he could get her clothes off in no time.  Respondent would comment that Complaining

2

Witness "smelled of sex" when she returned from lunch. Respondent asked Complaining Witness to watch porn with him—said she may "learn something." Respondent told Complaining Witness that he wanted to see her naked to see if she had a "fat pussy—did she look good naked." Respondent told Complaining Witness that she would "be lucky to perform oral sex on his penis."

Given the bulk of evidence demonstrating the inappropriate comments and statements that were attributed to Respondent coupled with no plausible evidence of improper motivation on behalf of the corroborating witnesses, the Board cannot escape the conclusion that Respondent engaged in verbal harassment toward the Complaining Witness which is conduct detrimental to the best interests of CSEA. Such conduct cannot be taken lightly nor tolerated.

Charge I is therefore sustained with regard to verbal harassment.

## CHARGE II

Charge II alleges that, "Beginning in or about October 2013, you have made repeated sexual gestures towards the complaining witness in an attempt to engage her in sexual relations in the CSEA Local Office, at CSEA workshops, conventions and other CSEA sanctioned events.

In addition, while out of town on CSEA business, you would request the complaining witness to come to your hotel room for sexual relations.

As Local President, sexually harassing your fellow officer, if proven, interferes with the Local Secretary's discharge of her lawful duties and is conduct detrimental to the best interests of CSEA."

The evidence demonstrates that at numerous workshops, conventions and other CSEA sanctioned events, where an overnight stay was included, Respondent would hold meetings in his room. Such meetings were not one-on-one meetings with Complaining Witness or any other officer. Instead, all officers from the Local in attendance at the event were invited to the meetings. There was no evidence presented that Respondent engaged in any sexual harassment with regard to these meetings. While there was testimony that during one of these meetings, Respondent was getting ready to go to dinner with his officers and he emerged from the bathroom in boxer shorts to retrieve a shirt,

3

there was no evidence that such action was an attempt to harass anyone, and the Complaining Witness was not present.

There was no corroborating evidence that Respondent requested Complaining Witness to come to his room, alone, for the purpose of sexual relations.

Without more, Charge II is dismissed.

## CHARGE III

Charge III alleges that, "As Local Secretary, the complaining witness was on full-time (40 hours) employee organizational leave ("EOL").

In retaliation for refusing your sexual advances, you took away all of the complaining witness' EOL time.

Retaliating against your fellow officer for her refusal of your sexual advances, if proven, interferes with the complaining witness' lawful discharge of her duties as a local officer and is conduct detrimental to the best interests of CSEA."

EOL time is a valuable tool for the Union.  It grants employees who are also officers of the Union time to perform Union duties while on employer time.  EOL time is granted pursuant to either the terms of a collective bargaining agreement or by side-letter agreement or by some other local agreement with the employer.  Who among the Local's officers gets EOL time is the decision of the Local President.

Here, the evidence demonstrates that the Complaining Witness went out on leave (and in fact has not since returned from leave).  Once on leave, the Respondent decided to rescind her EOL time, since she was not using it, and assign it to another Local Officer.  Assigning EOL time to an officer who is out on leave would be a waste of such a resource.

The loss of EOL time does not change the Complaining Witness' status as Local Secretary.  She is still the Local Secretary.  EOL is a luxury and, more often than not, officers of the Union do not have any EOL time.  Such officers must perform their Union duties on their own time.  Thus, the

4

Complaining Witness is still Local Secretary, and whether she is given EOL time upon her return to work or not, does not affect her officer status.

In any event, there is no evidence to demonstrate that once the Complaining Witness does return to work that she will not be given EOL time. The evidence demonstrates that the only reason the Complaining Witness' EOL time was rescinded is because she is out on medical leave, and thus cannot utilize EOL time to the benefit of the Local.

Accordingly, Charge III is dismissed.

## CHARGE IV

Charge IV alleges that, "You offered to "promote" the complaining witness from Local Secretary to Local Executive Vice President in exchange for sex.

Offering CSEA officer positions in exchange for sex, if proven, is conduct detrimental to the best interests of CSEA."

The testimony at hearing demonstrated that this Charge is simply untrue. The Complaining Witness was being considered as a candidate for Region Office. That decision is made by the Region President and/or any other candidates that may wish to challenge the incumbents. Indeed, the Complaining Witness herself may run for Region Office and does not need permission from the Local President. There is no evidence that there was ever any discussion of making the Complaining Witness the Local Executive Vice President.

Accordingly, Charge IV is dismissed.

## CHARGE V

Charge V alleges that, "As a Local President, you come into possession of information regarding a member's status vis-à-vis the employer and many times that information is both sensitive and confidential.

5

Discussing the complaining witness' medical condition and employment status with members, officers, delegates, OPWDD staff, CSEA staff, and others violates the duty to keep these matters confidential on behalf of your members.

Disclosing personal and confidential medical information of a member without the member's consent, if proven, is conduct detrimental to the best interests of CSEA."

The evidence demonstrates that the Respondent was upset that the Complaining Witness was out on leave. Respondent told several CSEA members and/or fellow officers that the Complaining Witness was "not really sick;" that "she didn't have cancer;" that "she does this every year;" that "she takes FMLA for vacation;" that "she's on vacation," and "out screwing around." Further, Respondent told CSEA members and/or fellow officers to not donate any leave time to the Complaining Witness so that ultimately, she would be on leave without pay.

Calling into question a fellow officer's medical condition is not the role of a local officer. Further, telling members what Complaining Witness does not have, i.e., "she does not have cancer," improperly reveals the condition for which the Complaining Witness was on leave for. Further, encouraging members to not donate time to the Complaining Witness is conduct detrimental to the best interests of CSEA.

Based on the numerous witnesses who testified that they heard Respondent make the above referenced statements and that Respondent told them not to donate any leave accruals to the Complaining Witness, Charge V is sustained.


**PENALTY**

Based on all the evidence, both in testimony and through documents, the Judicial Board having sustained Charges I and V against Respondent, directs that Respondent is hereby suspended from the right to seek or hold CSEA elected or appointed position for a period of three years commencing immediately. Further, before Respondent may be eligible to seek or hold any CSEA elected or

6

appointed position, Respondent must enroll in and successfully complete sexual harassment training. Such training is offered by the CSEA Education and Training Department.

Dated:  July 7, 2015                                    Respectfully Submitted,


                                                        JUDICIAL BOARD of the
                                                        Civil Service Employees Association, Inc.


PLEASE BE ADVISED, *That Should You Wish To Appeal This Decision, You May Do So By Filing An Objection With The Board of Directors Of CSEA Within Fifteen (15) Days After Receipt Of This Decision.  In Order To Be Deemed Timely, The Appeal Must Be Received By CSEA Headquarters Within Fifteen (15) Days Of The Receipt Of The Decision.  The Objections Must Specify Each And Every Part Of The Judicial Board Decision To Which Objection Is Taken, Including Specific Questions Of Procedure, Fact, Law Or Policy And Must Specify The Reasons For The Objections.  The Objections Must Be Sent By Registered Or Certified Mail, Return Receipt Requested To:*

APPEALS COMMITTEE
Brenda Facin, Chair
CSEA Board of Directors
143 Washington Avenue
Albany, New York 12210

*Copies of Your Objections Must Be Mailed To The Judicial Board, 143 Washington Avenue, Albany, New York 12210.*